IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-78

 No. 353A20

 Filed 18 June 2021

 IN THE MATTER OF: Z.R., J.R., A.L.M.W.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 13 May

2020 by Judge Tonia Cutchin in District Court, Guilford County.1 This matter was

calendared for argument in the Supreme Court on 22 April 2021, but was determined

on the record and briefs without oral argument pursuant to Rule 30(f) of the North

Carolina Rules of Appellate Procedure.

 Mercedes O. Chut for petitioner-appellee Guilford County Department of Health
 & Human Services.

 Kelsey L. Kingsbery and Michelle C. Prendergast for appellee Guardian ad
 Litem.

 Garron T. Michael for respondent-appellant mother.

 PER CURIAM.

 1 The trial court’s original termination order was filed on 31 March 2020, with an

amended order having been filed on 13 May 2020, with the notice of appeal claiming to seek
appellate relief from an order filed and served on 2 April 2020. In view of the fact that no
party has objected to the sufficiency of the notice of appeal and the fact that the identity of
the relevant termination order is clear from the record, we deem the notice of appeal
sufficient to confer jurisdiction upon this Court.
 IN RE Z.R., J.R., A.L.M.W.

 2021-NCSC-78

 Opinion of the Court

¶1 Respondent-mother Tabitha W. appeals from the trial court’s order

 terminating her parental rights in her minor children Z.R., J.R., and A.L.M.W.,2 who

 were born in 2013, 2011, and 2008, respectively.3 See N.C.G.S. § 7B-1001(a1) (2019).

 After careful consideration of the record and briefs in light of the applicable law, we

 conclude that the trial court’s termination order should be affirmed.

¶2 On 27 January 2017, the Guilford County Department of Health and Human

 Services filed petitions alleging that three-year-old Zoey and five-year-old John were

 neglected and dependent juveniles and obtained the entry of orders placing both of

 them in nonsecure custody. In its petition, DHHS alleged that respondent-mother,

 who had had six children, had a child protective services history that dated back to

 July 2007 and involved multiple reports that she had failed to provide proper care for

 and supervision of her children and had engaged in substance abuse. In July 2016,

 DHHS had received another child protective services report alleging that the

 children’s maternal grandmother, who was currently serving as the primary

 caretaker for five of respondent-mother’s children, including Zoey, John, and Allison,

 2 Z.R, J.R., and A.L.M.W. will be referred to throughout the remainder of this opinion

 as “Zoey,” “John,” and “Allison,” which are pseudonyms used for ease of reading and to protect
 the juveniles’ identities. We will refer to respondent-mother’s minor child E.A.M. as
 “Edward,” to her minor child Z.M.B.-M. as “Zach,” and to her minor child T.A.S. as “Tina,”
 none of whom are parties to this case, for the same reasons.
 3 In addition, the trial court terminated the parental rights of Zoey and John’s father

 and Allison’s father. In view of the fact that neither of the children’s fathers is a party to this
 appeal, we will refrain from discussing the proceedings relating to either father in any detail
 in this opinion.
 IN RE Z.R., J.R., A.L.M.W.

 2021-NCSC-78

 Opinion of the Court

 had hit twelve-year-old Edward in the face with a belt and “that the mother and

 grandmother are overwhelmed due to the stressful situation with the kids.” Although

 both Edward and Allison confirmed that she had engaged in violent conduct toward

 Edward, the maternal grandmother reacted to the initiation of the DHHS

 investigation in a hostile manner and denied having hit Edward. While speaking

 with a social worker, the maternal grandmother disclaimed any knowledge of

 respondent-mother’s current location or how to contact her given that respondent-

 mother “moves from motel to motel and calls her from a bunch of different numbers.”

¶3 In addition, DHHS alleged that, on 9 August 2016, the maternal grandmother

 had reported that respondent-mother had retrieved her children from the

 grandmother’s home. After denying that she knew where respondent-mother was or

 how to contact her, the maternal grandmother stated that she was no longer willing

 to care for the children. Following an unsuccessful attempt to contact respondent-

 mother by mail, a social worker used Student Locator to determine that Edward had

 been enrolled in school in the maternal grandmother’s school district, while Zach and

 Alison had been enrolled in school in Haw River. At that point, the maternal

 grandmother told the social worker that “some of the children were in Haw River

 with her son and others were with their mother.”

¶4 DHHS further alleged that the social worker had learned that the children’s

 maternal aunt was caring for Zach, Allison, John, and Tina in her own home. As had
 IN RE Z.R., J.R., A.L.M.W.

 2021-NCSC-78

 Opinion of the Court

 been the case with the maternal grandmother, the aunt claimed not to know where

 respondent-mother was located or how to reach her given that respondent-mother

 “always calls from private numbers.” The aunt told the social worker that

 respondent-mother “will get upset with her at times and will take the children but

 she is unable to care for them so she will eventually have to return them to her.”

¶5 DHHS alleged that the social worker had made contact with respondent-

 mother on 19 October 2016. Respondent-mother “reported being unstable and

 bouncing from motel to motel” and explained that she had left the children with

 members of her family for that reason. In December 2016, the social worker spoke to

 Zoey and John’s father, who was incarcerated and had a scheduled release date of

 July 2017. The father reported that John was staying with his maternal aunt and

 uncle, that Zoey had been residing with her maternal grandmother, and that he was

 willing to transfer custody of his children to their current caretakers in order to

 prevent them from being taken into DHHS custody.

¶6 Finally, the petition alleged that DHHS had held a team decision-making

 meeting with the parents and caretakers on 26 January 2017, during which

 respondent-mother had “admitted she [was] not in a position to care [for] the children

 at this time.” As a result, DHHS and the parents agreed that Edward would be placed

 with his father; that Zach, Allison, and Tina would be placed with their maternal
 IN RE Z.R., J.R., A.L.M.W.

 2021-NCSC-78

 Opinion of the Court

 aunt and uncle; and that no suitable placement option could be identified for Zoey

 and John.

¶7 On 21 March 2017, DHHS filed a petition alleging that Allison was a neglected

 and dependent juvenile and obtained the entry of an order taking her into nonsecure

 custody. In its petition, DHHS alleged that Allison’s father had agreed to leave his

 daughter in the care of her maternal aunt and uncle while he developed a relationship

 with her. Although he had failed to attend a scheduled visitation on 4 February 2017,

 Allison had a weekend-long visit with her father on 10 February 2017, after which

 Allison “expressed that she did not like being at her father’s home but would not

 elaborate.” In addition, DHHS alleged that Allison’s father had failed to attend an

 appointment at DHHS on 17 February 2017, at which he was scheduled to sign an

 agreement allowing the maternal aunt and uncle to take Allison into their custody.

 DHHS did not hear anything further from Allison’s father until 27 February 2017,

 when he told the social worker that he had moved to Georgia and had no plans to

 return to North Carolina. Although he claimed that his preference was for Allison to

 come and live with him in Georgia, the father agreed to transfer custody to Allison’s

 maternal aunt and uncle in the event that the necessary documents were mailed to

 him. However, even though she had mailed the relevant custody-related documents

 to the father in accordance with his request, the social worker had been unable to

 reach Allison’s father by the date upon which the petition was filed.
 IN RE Z.R., J.R., A.L.M.W.

 2021-NCSC-78

 Opinion of the Court

¶8 On 20 February 2017, respondent-mother entered into a case plan agreement

 with DHHS. According to an updated case plan that she had entered into on 6 July

 2017, respondent-mother agreed to complete a substance abuse and mental health

 assessment and comply with any resulting treatment recommendations; submit to

 random drug screens within forty-eight hours after a request for testing had been

 made; obtain and maintain housing that was suitable for herself and the children;

 verify that she had obtained sufficient income to meet her family’s needs; successfully

 complete the Parent Assessment Training and Education Program; submit to a

 parenting and psychological evaluation and comply with any resulting treatment

 recommendations; attend scheduled visitations with the children; participate in

 shared parenting; refrain from making social media posts about the proceedings; and

 cooperate with Child Support Enforcement.

¶9 After a hearing held on 2 August 2017, Judge Betty J. Brown entered an order

 on 29 August 2017 in which she found Zoey, John, and Allison to be neglected and

 dependent juveniles. Judge Brown ordered that the children remain in DHHS

 custody, ordered respondent-mother to comply with the terms and conditions of her

 case plan, and authorized weekly supervised visits between respondent-mother and

 each of the children.

¶ 10 After the initial permanency planning hearing held on 27 October 2017, Judge

 Brown entered an order on 22 November 2017 establishing a primary permanent plan
 IN RE Z.R., J.R., A.L.M.W.

 2021-NCSC-78

 Opinion of the Court

 of reunification for all three children, with a secondary concurrent plan of

 guardianship for Allison and a secondary concurrent plan of adoption for Zoey and

 John. In light of respondent-mother’s failure to make progress toward achieving

 stability and her failure to comply with her mental health and substance abuse

 treatment recommendations, Judge Lora C. Cubbage entered an order on 15 August

 2018 changing the children’s primary permanent plan to one of adoption, with a

 secondary concurrent plan of reunification.

¶ 11 On 9 October 2018, DHHS filed a petition seeking to have the parents’ parental

 rights in Zoey, John, and Allison terminated. Prior to the conclusion of a termination

 hearing held on 20 August 2019, Judge Angela Foster entered an order declaring a

 mistrial, appointing new counsel to represent Zoey and John’s father, and recusing

 herself from the proceeding.

¶ 12 After a hearing held on 25 February 2020, the trial court entered an amended

 order on 13 May 2020 in which it determined that the parental rights of respondent-

 mother and both fathers were subject to termination on the basis of neglect, N.C.G.S.

 § 7B-1111(a)(1), and willful failure to make reasonable progress toward correcting

 the conditions that had resulted in the children’s removal to a placement outside the

 family home, N.C.G.S. § 7B-1111(a)(2).4 See N.C.G.S. § 7B-1111(a)(1)–(2) (2019).

 4 The trial court also concluded that the parental rights of Zoey and John’s father were

 subject to termination based upon his willful failure to pay a reasonable portion of the
 children’s cost of care pursuant to N.C.G.S. § 7B-1111(a)(3) and that the parental rights of
 IN RE Z.R., J.R., A.L.M.W.

 2021-NCSC-78

 Opinion of the Court

 Similarly, after considering the dispositional factors enunciated in N.C.G.S. § 7B-

 1110(a) and determining that the termination of each parent’s parental rights would

 be in the children’s best interests, the trial court ordered that the parental rights of

 each parent be terminated. Respondent-mother noted an appeal to this Court from

 the amended termination order.

¶ 13 Respondent-mother’s appellate counsel has filed a no-merit brief on her behalf

 with this Court as is authorized by N.C. R. App. P. Rule 3.1(e). As part of that process,

 respondent-mother’s appellate counsel attempted to advise respondent-mother of her

 right to file a pro se brief on her own behalf and to provide respondent-mother with

 the documents that she would need to make such a filing. See N.C. R. App. P. 3.1(e).

 Subsequently, however, respondent-mother’s appellate counsel notified this Court

 that his letter to respondent-mother explaining her right to file a pro se brief and

 providing her with copies of the relevant documents had been “returned to [his] office

 with an ‘unable to forward’ designation.” Appellate counsel for respondent-mother

 described his subsequent efforts to contact respondent-mother for the purpose of

 complying with his obligations pursuant to N.C.R. App. P. 3.1(e) as follows:

 4. The undersigned mailed the no-merit documents via
 U.S. Priority Mail to the same address . . . he has
 previously sent mail correspondence [to respondent-

 Allison’s father were subject to termination for willful abandonment pursuant to N.C.G.S. §
 7B-1111(a)(7) (2019).
 IN RE Z.R., J.R., A.L.M.W.

 2021-NCSC-78

 Opinion of the Court

 mother]. No prior correspondences were returned
 before 17 September 2020.

 5. The undersigned has never had direct contact with
 [respondent-mother] despite repeated efforts. The
 undersigned has contacted trial counsel on multiple
 occasions and requested additional contact information
 for [respondent-mother]. Trial counsel does not
 possess any viable telephone numbers, addresses, or
 other means of contact for [respondent-mother] beyond
 those already utilized by the undersigned.

 6. Since the no-merit package was returned, the
 undersigned has attempted to locate [respondent-
 mother], or any viable contact information, through
 various means such as social media, including
 Facebook, as well as running searches with the
 BeenVerified program to no avail.

 7. The undersigned has attempted to locate [respondent-
 mother’s] relatives to obtain contact information but
 remains unable to locate or contact [respondent-
 mother] as of this filing.

 8. The address utilized for mailing the no-merit
 documents on 8 September 2020 was the same address
 [respondent-mother] indicated as being her residence
 during her testimony on 25 February 2020.

 9. The undersigned will continue to try and contact
 [respondent-mother] and remains willing to follow any
 further directives deemed necessary by this Court.

As of the present date, it appears that the subsequent efforts that respondent-

mother’s appellate counsel made for the purpose of attempting to contact her have

proven equally unsuccessful. Respondent-mother has not submitted any written

arguments to this Court for our consideration.
 IN RE Z.R., J.R., A.L.M.W.

 2021-NCSC-78

 Opinion of the Court

¶ 14 N.C.R. App. P. 3.1(e) provides that:

 Counsel must provide the appellant with a copy of the no-
 merit brief, the transcript, the printed record on appeal,
 and any supplements or exhibits that have been filed with
 the appellate court. Counsel must inform the appellant in
 writing that the appellant may file a pro se brief and that
 the pro se brief is due within thirty days after the date of
 the filing of the no-merit brief. Counsel must attach
 evidence of this communication to the no-merit brief.

 N.C. R. App. P. 3.1(e) (emphases added). In this case, however, respondent-mother’s

 “failure to communicate [her] current address to appellant counsel frustrates

 counsel’s compliance with the Rule.” In re D.A., 262 N.C. App. 71, 74 (2018).

 Although we have recognized “the significant interest of ensuring that orders

 depriving parents of their fundamental right to parenthood are given meaningful

 appellate review,” In re L.E.M., 372 N.C. 396, 402, 831 S.E.2d 341, 345 (2019), in light

 of the “exhaustive efforts” that respondent-mother’s appellate counsel has made to

 contact his client and to provide her with the notice and materials contemplated by

 N.C.R. App. P. 3.1(e), we elect to suspend the requirements of N.C.R. App. P. 3.1(e)

 as authorized by N.C.R. App. P. 2 in order “to ‘expedite a decision in the public

 interest,’ ” In re D.A., 262 N.C. App. at 75–76, 820 S.E.2d at 875 (quoting N.C. R. App.

 P. 2).

¶ 15 When a parent’s appellate counsel files a no-merit brief on his or her client’s

 behalf pursuant to N.C. R. App. P. 3.1(e), this Court reviews the issues that are

 identified in that brief to see if they have potential merit. In re L.E.M., 372 N.C. at
 IN RE Z.R., J.R., A.L.M.W.

 2021-NCSC-78

 Opinion of the Court

402, 831 S.E.2d at 345. In the no-merit brief that he filed on his client’s behalf,

respondent-mother’s appellate counsel identified certain issues relating to the

adjudicatory and dispositional portions of this proceeding that could arguably support

an award of appellate relief, including whether the trial court properly found that

respondent-mother’s parental rights in the children were subject to termination and

whether the trial court abused its discretion by determining that the termination of

respondent-mother’s parental rights in the children would be in their best interests,

before explaining why he believed that these potential issues lacked merit. After a

careful review of the issues identified in the no-merit brief that respondent-mother’s

appellate counsel has filed on his client’s behalf in light of the record and the

applicable law, we are satisfied that the findings of fact contained in the trial court’s

termination order have ample record support and that those findings of fact support

the trial court’s determination that respondent-mother’s parental rights in Zoey,

John, and Allison were subject to termination on the basis of at least one of the

grounds delineated in N.C.G.S. § 7B-1111(a) and that the termination of respondent-

mother’s parental rights in the children would be in their best interests. As a result,

we affirm the trial court’s termination order.

 AFFIRMED.